IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
AUG 2 2 2018
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | |
|---|---|
| IRIS LEDESMA, <br> Plaintiff, <br> vs. <br><br> TEXAS EDUCATION AGENCY REGION 20 EDUCATIONAL SERVICE CENTER, <br> Defendant. | § <br> § <br> § <br> § CIVIL ACTION NO. SA18CA0861 FB <br> § <br> § <br> § <br> § |

## PLAINTIFF'S ORIGINAL COMPLAINT

IRIS LEDESMA, Plaintiff herein, files this her Original Complaint, complaining of TEXAS EDUCATION AGENCY REGION 20 EDUCATIONAL SERVICE CENTER, Defendant herein, and in support thereof would show the Court as follows:

### I. JURISDICTION

1. The Court has jurisdiction over the lawsuit because this lawsuit is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 USC §§ 2000e et seq.); Employment Discrimination on the basis of age (57 yrs. old) in violation of the Age Discrimination Employment Act (ADEA) of 1967 (29 U.S.C. § 621 to § 634); Employment Discrimination on the basis of Race (Panamanian-American) and National Origin (Panama); and harassment and hostile work environment; and retaliation.

2. Jurisdiction in this Court is proper under 28 U.S.C. § 1331.

### II. VENUE

3. Venue is proper in this district under 28 U.S.C. § 1391 (b)(2) and (c)(2) because this judicial district is where a substantial part of the events or omissions giving rise to the asserted claims occurred and because the Defendant is subject to personal

1

jurisdiction in this judicial district.

### III. PARTIES

4. Plaintiff is a fifty-seven (57) year old female, Panamanian-American who was employed by Defendant for approximately three (3) years as an Accountant Assistant; and she resides at 14535 Clydesdale Trail, San Antonio, Texas 78254.

5. Defendant is one of twenty (20) Regional Service Centers established under *Chapter 8 of the Texas Education Code*, enacted by the 75th Texas Legislature in 1997; and is a service organization and not a regulatory arm of the Texas State Agency; and participation by schools for services provided by Defendant is voluntary. Defendant can be served with summons of process by serving its Executive Director, Dr. Jeff Goldhorn at 1314 Hines Avenue, San Antonio, Texas 78208.

### IV. CONDITIONS PRECEDENT TO SUIT

6. Plaintiff exhausted her administrative remedies, including filing her claim with the Equal Employment Opportunity Commission (EEOC). The EEOC issued its right to sue letter (uncertified letter) dated May 30, 2018 informing the Plaintiff that she had ninety (90) days from receipt of the letter to file her claim in federal or state court. Plaintiff received the letter on June 2, 2018 and timely filed her complaint within ninety (90) days from receipt of the letter.

7. All conditions precedent have occurred or have been performed.

### V. FACTS

8. Plaintiff is in a protected class: fifty-seven (57) years old, minority female of Panamanian descent.

9. Plaintiff's supervisor was Vanessa Benavides, Accounting Supervisor,

Mexican-American female, (hereinafter "Benavides") approximately in her mid-thirty's (30) years of age.

10. Plaintiff's work responsibilities and work schedule were as follows: Monday through Friday working from 8:00 a.m. to 4:30 pm; prepare monthly charges for printing, photocopy, and postage; verifying all checks being paid have the correct amount with proper documentation and approvals; prepare daily cash receipts; and assisting and maintain meeting room files entries.

11. Plaintiff's responsibilities were on a rotating basis every three (3) months with a co-worker, Terri Pittman (hereinafter "Pittman"), Accounting Assistance, Anglo, female, approximately fifty-five (55) years old. Plaintiff and Pittman were both Account Assistants; and neither one was above the other.

12. Terri Pittman, Accountant Assistance, Anglo female engaged in harassing the Plaintiff causing Plaintiff difficulty in performing her job responsibilities and unwarranted stress. For example, while Plaintiff would be working on daily assignments, Pittman would stand behind Plaintiff monitoring Plaintiff's work although Pittman did not do that with any other employee in the department; and Pittman on a daily basis would constantly be telling Plaintiff how to do her work and correcting Plaintiff in front of her co-workers and loud enough whereby her [Plaintiff] co-workers could hear.

13. Plaintiff asked Pittman to cease her harassment, but Pittman's harassment increased thereby creating a hostile work environment for Plaintiff.

14. Plaintiff made a protected disclosure of Pittman's harassment to her Supervisor, Benavides.

15. Defendant failed to take any action to address Plaintiff's protected disclosure

of harassment.

16. Defendant ignored Plaintiff's protected disclosure of harassment and characterized Plaintiff, that it was her imagination.

17. Defendant's Human Resources and Benavides continued to ignore Plaintiff's complaints of harassment by Pittman and being subjected to a hostile work environment. Plaintiff made several complaints for a period of approximately two (2) years (2014-2016) to Defendant's Human Resources and her [Plaintiff] Supervisor, Benavides.

18. On or about August 12, 2014, Plaintiff received her Continuous Performance Report (CPR) from her Supervisor Benavidez. Benavidez noted Plaintiff had "accomplished" all her goals; and she was doing a "Tremendous job while working [with Defendant] for the past 5 months showing great initiative and devotion to my position".

19. On August 13, 2015, Plaintiff received her performance review her from Supervisor, Benavidez, Accounting Supervisor; Benavides commented that- "I had accomplished all my duties with satisfactory comments."

20. In May, 2016 Plaintiff's CPR, Plaintiff complained to her Supervisor Benavides about her [Benavides'] reference to Pittman's work performance in Plaintiff's performance review and made it appear as if Pittman was performing Plaintiff's work responsibilities.

21. On June 20, 2016, Plaintiff submitted a rebuttal to Defendant's Human Resources regarding the comments made by her Supervisor Benavides in Plaintiff's May 2016 CPR.

22. Supervisor Benavides then retaliated against Plaintiff and publicly made loud complaints of Plaintiff's bad work; pointing out Plaintiff's bad faults; and scrutinized

Plaintiff's work performance in front of Plaintiff's co-workers intended to humiliate and embarrass Plaintiff.

23. Defendant increased Plaintiff's work load subjecting her to harassment and hostile work environment; and treated Plaintiff less favorably than other similarly situated employees.

24. Defendant retaliated against Plaintiff and was given a negative evaluation in May, 2016 and noted in Plaintiff's CPR, "Having been with the center for over 2 years, Iris lacks the confidence necessary to complete her duties without assistance".

25. Defendant isolated Plaintiff and was not invite to group Team lunches.

26. Defendant subjected Plaintiff to public ridicule and constant belittling in front of other employees.

27. Supervisor Benavides placed Plaintiff's work desk next to her [Benavides'] which Plaintiff contends was intended to humiliate her in front of her co-workers.

28. Supervisor Benavides directed Plaintiff not to speak with other employees.

29. Defendant's unwarranted and unwelcomed harassment and creation of a hostile work environment was intended to diminish Plaintiff's character and force Plaintiff to quit her employment.

30. Defendant's action and conduct directly affected Plaintiff's ability to properly perform her work; and Plaintiff begin to experience anxiety, depression, and was always in fear of being terminated.

31. On June 16, 2016, Plaintiff via email informed her Supervisor Benavidez that she [Plaintiff] needed an extra week to complete the filing of the meeting room bills paperwork Benavidez assigned to Plaintiff. Plaintiff informed Benavides that she

[Plaintiff] would have to stop her [Plaintiff] daily work to complete the task; that she [Plaintiff] had too many tasks assigned to her [Plaintiff]; and consequently, would not be able to complete the filing and complete her [Plaintiff] daily work.

32. On June 20, 2016, Plaintiff via email disclosed to Human Resources Manager, Ann Brownlee, Anglo female, about the harassment, subjection to hostile work environment, and complained of her work performance evaluation. Prior to June 20, 2016, Plaintiff had disclosed the same claims to Paul Neuhoff, Financial Services Component Director.

33. Supervisor Benavides directed Plaintiff to complete the task by June 26, 2016; however, Benavides proceeded to intentionally falsify information to Lia Flores, Coordinator. Benavides informed Flores that she [Benavides] had provided Plaintiff with a deadline prior to June 16, 2016.

34. Plaintiff made protected disclosure to two (2) female co-workers, Ann Dykes, Afro-American, female, approximately sixty-three (63) years old, and Jackie Spotser, Afro-American, female, approximately sixty-five (65) regarding Benavides' treatment of Plaintiff and that Plaintiff could not continue to work in the conditions Plaintiff was being subjected to by Benavides.

35. On June 30, 2016, via a written Memo to Paul Neuhoff, Defendant's Financial Services Component Director; and Ms. Ann Brownlee, Defendant's Human Resources Component Director, Plaintiff disclosed that she was being subjected to abuse by Lia Flores and Supervisor Benavides that was causing her physical and emotional harm.

36. In June 2016, Plaintiff started having panic attacks at work and would request sick leave and would leave work at lunch time. Plaintiff was scared, nervous and felt like

throwing up and would constantly have to use the bathroom due to her nervousness.

37. On June 30, 2016, Plaintiff met with Ann Brownlee, Defendant's Human Resources Component Director, during this meeting Plaintiff disclosed her concerns regarding her [Plaintiff] 2015-16 work performance evaluation, communications with a coworker and her [Plaintiff] supervisors; the flow of work (assigned more work) in her [Plaintiff] department; the unfair treatment; and feeling humiliated and bullied by both her [Plaintiff] supervisor and coworker, Pittman.

38. On July 13, 2016, Plaintiff engaged in a protective activity when she [Plaintiff] met with Ann Brownlee, Defendant's Human Resources, Paul Heuhoff, and Benavides and disclosed (initially disclosed via memos dated June 20th and 30th 2016) the unfair treatment by her [Plaintiff] supervisors and coworker'; being ostracized in the workplace by her [Plaintiff] Supervisor Benavides; and subjected to hostile work environment resulting in a decline physical and mental well-being.

39. Defendant through its agent, Ann Brownlee, Human Resources apparently conducted an investigation of Plaintiff's complaints on July 13, 2016, the same day after Plaintiff had met with Brownlee, Heuhoff, and Benavides.

40. Defendant's Human Resources Director, Ann Brownlee issued her finding of her investigation: "After hearing and carefully considering the information presented by both you [Plaintiff] and your supervisors, it does not appear that you are being intentionally harassed or bullied by your supervisor or your co-worker. At this time, Human Resources consider this matter fully address and closed. As agreed, please proceed with the plan we discussed to work with your supervisor and Component Director to address workflow and communication issued within your workgroup".

41. Ann Brownlee did not conduct any interviews with Plaintiff's co-workers regarding the complaints made by the Plaintiff.

42. Defendant took no action to address Plaintiff's complaints of being harassed nor subjected to a hostile work environment; Defendant's investigation was inadequate, one-sided and biased.

43. Defendant allowed and condoned Benavides to continue her [Benavides] harassment of and subjecting Plaintiff to a hostile work environment.

44. Supervisor Benavides increased her harassment of the Plaintiff; Benavides' harassment of Plaintiff was now constant; she [Benavides] would publicly compare Plaintiff's work with that of Pittman's; and that Plaintiff was not working as fast as Pittman; consequently, Plaintiff could not function without being nervous.

45. On or approximately September 30, 2016, Supervisor Benavides allowed Pittman to work overtime. Plaintiff was never allowed to work overtime; and denied overtime when she [Plaintiff] returned from sick leave. Plaintiff requested overtime to make up for the work that had piled up.

46. Benavides directed Plaintiff not to work during her lunch hour. Benavides falsely accused Plaintiff of working fifteen (15) minutes during lunch and directed Plaintiff to charge the overtime to the Department's budget. Plaintiff refused to sign the time card as it would constitute falsifying a document.

47. On September 30, 2016, Benavides via text message, instructed Plaintiff to "Please log into the CPR system [work performance evaluation] and sign your CPR". Plaintiff was unable to sign in to sign the CPR, Plaintiff was at home on sick leave. Benavides ordered Plaintiff to come into the office to sign her CPR. Plaintiff was forced

to go to the office and had her husband, Roy Ledesma drive her to the office. The signing of the CPR could have waited until Monday.

48. On October 21, 2016, Benavides approached Plaintiff at her desk and questioned Plaintiff if she had started working on the bank statements- to which Plaintiff replied-" no, she [Plaintiff] had not, and that Pittman was working on the bank statements because Plaintiff had been assigned too much work."

49. Benavides proceeded to humiliate the Plaintiff and intimate her [Plaintiff] when in a load voice, and in front of Plaintiff's co-workers, she [Benavides] told Pittman she [Pittman] was not supposed to help Plaintiff. Benavides then directed Plaintiff to retrieve all work from Pittman and perform the work on her [Plaintiff] own.

50. Due to Benavides harsh and severe conduct, Plaintiff began to cry and immediately disclosed the incident to Paul Heuhoff; and made a protected disclosure of being harassed. Heuhoff took no action to address Plaintiff's disclosure of harassment.

51. Plaintiff experienced severe anxiety; and on or about October 25, 2016, Plaintiff's psychologist, Beth Boone, female, submitted a letter to Defendant requesting modifications to Plaintiff's work hours so Plaintiff could manage her symptoms associated to severe anxiety and depression caused by the hostile work environment and treatment by Supervisor Benavidez.

52. Defendant's accommodations for Plaintiff did not resolve nor address the harassment nor the hostile work environment, she [Plaintiff] was being subjected to by Benavides. Plaintiff's work merely changed to start working at 7:30 a.m. instead of 8:00 a.m.; and end work at 4:00 p.m. instead of 4:30 p.m.

53. Benavides retaliated by assigning more work to Plaintiff thereby aggravating

Plaintiff's medical condition.

54. On or about January 3, 2017, Plaintiff met with Jeff Goldhorn, Ph.D., Defendant's Region 20 Executive Director male, Anglo approximately sixty-one (61) years old. Plaintiff disclosed to Goldhorn the harassment and hostile work environment she [Plaintiff] was being subjected to and she asked for help. Goldhorn denied the Plaintiff the opportunity to fully explain her situation and was directed to go back to Human Resources and her Supervisor to discuss her issues.

55. In a Memo dated on or about March 15, 2017, Dr. Beth Boone disclosed, "Iris has developed anxiety and depression related to unfairness in distribution of workload at Region 20 Finance department, being harassed, being ostracized from others in her department by being left out of social events and not informed about meetings. Iris also was criticized and reprimanded publicly in front of co-workers, so that she felt self-conscious and humiliated. Attempts to resolve problems with co-workers were unsuccessful, and ignored by her supervisor, unresolved by her human resources department. Iris felt harassed and worried about her job stability, and her self-esteem suffer as a result. Over time she has become increasingly stressed, anxious and depressed."

56. In a letter dated on or about June 23, 2017, Dr. Beth Boone informed the Defendant that Plaintiff should be "allow[ed] two weeks' time off due to her severe anxiety and depressive symptoms, which include panic attacks that have become more frequent. This was due to symptoms caused by her workplace situation". Plaintiff was granted two (2) weeks off.

57. Defendant and its agent Benavides engaged in false accusations and in

retaliation as a result of Dr. Boone's letter dated June 23, 2017. On or about July 25, 2017, Benavides commented on Plaintiff's CPR, "there were situations that were brought to her attention by other staff members about [Plaintiff's] attitude and behavior do not reflect professionalism. It is my perception that she [Plaintiff] reacts in a hostile (unfriendly or unprofessional) manner or does not answer at all when I ask things of her".

58. Neither Defendant nor its agent, Benavides had previously brought up the claims made against Plaintiff in her [Plaintiff] July 25, 2017 CPR. This was the first time, Plaintiff was made aware of these claims being made against her.

59. Benavides disclosed to Plaintiff that Elaine Lopez, female, Hispanic, Accounting Receivables, approximately forty (40) years old informed her [Benavides] that on one occasion while in the break room when Plaintiff was leaving the break room Lopez asked Plaintiff to put the chair back inside the table. Plaintiff contends she did not speak to Lopez but simply left the break room, and was not discourteous nor unprofessional to anyone.

60. Plaintiff submitted a response to Benavides' comments that she [Benavides] made on Plaintiff's July 25, 2017 CPR. Defendant never provided any documentation to Plaintiff in support of her [Benavides] comments, nor was Plaintiff given an opportunity of any feedback on her July 2017 CPR; nor was any corrective plan implemented by Benavides in regards to her [Benavides] comments.

61. On or about August 3, 2017, Benavides instructed Plaintiff to accompany her to meet with Paul Neuhoff. Once in Mr. Heuhoff's office, Heuhoff informed Plaintiff that she was being terminated due to her work performance. Plaintiff disagreed with Heuhoff's assessment.

62. Plaintiff was instructed to see Ann Brownlee, Human Resources Director and Sara Moffett, female, Anglo, Human Resource Generalist, Operations to sign the termination paperwork. Plaintiff refused to sign any paperwork.

63. On or about August 4, 2017, Connie Rodriguez, Mexican American female, approximately fifty-six (56) years old, Accounting Receivable Supervisor, informed Plaintiff that she [Rodriguez] was terminated by Ann Brownlee, Human Resources. Rodriquez informed Plaintiff that in November 2016, Defendant's supervisors' meeting, Supervisor, Lia Flores went around the room asking each supervisor of any concerns in their department. Rodriquez further disclosed to Plaintiff, that Benavides informed the supervisors present, that she [Benavides] was having problems with Plaintiff and Flores told Benavides they would talk about it after the meeting.

64. Plaintiff was the oldest employee in the Accounting department; younger employees and other similar situated employees were treated more favorably and with respect without humiliation and harassment.

## VI. CAUSES OF ACTION

A. **Title VII Employment Discrimination:**

65. Plaintiff incorporates Paragraphs 8 through 64, above by reference as if fully set forth herein. The conduct of Defendant constitutes a violation of the Equal Employment Opportunity Acts prohibitions of discrimination based upon Race (Panamanian-American); National Origin (Panamanian), 42 U.S.C. 2000e, et seq; 42 U.S.C. § 2000e-2 (a) (1); and age (57 years old) in violation of the Age Discrimination Employment Act (ADEA) of 1967 (29 U.S.C. § 621 to 29 U.S.C. § 634)

    a. Plaintiff is a member of a protected class;

   b. Was qualified for the position (Accounting Assistant);

   c. Was subjected to an adverse employment action;

   d. Suffered under circumstances giving rise to an inference of discrimination; and

   e. Subjected to disparate treatment.

**B. Retaliation, Harassment and Hostile Work Environment:**

66. Plaintiff incorporates Paragraphs 8 through 64, above by reference as if fully set forth herein. The conduct of the Defendant constitutes retaliation, harassment, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

   a. Plaintiff participated in activity protected under federal law, that is Plaintiff made protected disclosures of unlawful employment practices and filed a discrimination claim of harassment and hostile work environment;

   b. Defendant subjected the Plaintiff to an adverse employment action, that is Plaintiff was terminated;

   c. Plaintiff was subjected to the adverse employment action because of her disclosures of unlawful employment practices and filing a discrimination claim of harassment and hostile work environment;

   d. Plaintiff is a member of a protected class;

   e. Defendant was aware of Plaintiff's protected class;

   f. Acts of harm did occur and incidents of harassment happened on a "regular and pervasive" basis that such acts of harassment adversely affected Plaintiff's work performance.

   g. Plaintiff was subjected to unwelcomed harassment; and

   h. Defendant's harassment affected the terms and/or conditions of Plaintiff's

employment and/or had the purpose, effect, and intent of unreasonably interfering with Plaintiff's work environment and created an intimidating, hostile, and offensive work environment for Plaintiff.

## V. DAMAGES

67. Defendant's acts and omissions have caused Plaintiff to suffer damages including past and future lost earnings (including back pay and front pay), past and future injury to reputation, physical injury, and past and future mental anguish and emotional distress.

68. Plaintiff seeks recovery of these damages from Defendant.

## VI. ATTORNEY FEES

69. Defendant's acts and omissions have caused Plaintiff to incur attorney's fees and court costs. Plaintiff is entitled to an award of attorney's fees and costs under Title VII, 42 U.S. C. § 2000e-5(K). Plaintiff seeks recovery from Defendant for all attorney's fees and court costs through judgment in this court with additional contingent amounts in the event of post-judgment and appellate proceedings. All conditions precedent to the recovery of attorney fees have been satisfied.

## VII. JURY DEMAND

70. Plaintiff requests a trial by jury of the issues in this case.

## VIII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendant be cited to appear and answer herein to Plaintiff's Original Complaint, and that upon final trial, this court enter a judgment awarding the Plaintiff all of the aforementioned damages, attorney's fees, costs of court, and prejudgment and post-judgment interest. Plaintiff also asks for such other and further relief, whether legal or

equitable, to which Plaintiff may be justly entitled.

Plaintiff requests a jury trial.

>Respectfully submitted,
>
>LAW OFFICES OF ARTHUR G. VEGA
>P.O. Box 461106
>San Antonio, Texas 78246-1106
>Telephone Number:   (210) 379-3111
>E-mail: artavega@yahoo.com
>
>*/s/ Arthur G. Vega*
>ARTHUR G. VEGA
>State Bar No. 20533600
>
>ATTORNEY   FOR   PLAINTIFF